UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION AT LEXINGTON

CIVIL ACTION NO. 09-287-KSF

FIFTH THIRD BANK                                                                    PLAINTIFF

V                                  **OPINION & ORDER**

J. FRED MILLER, III d/b/a
MILLER THOROUGHBREDS, LLC                                  DEFENDANTS

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

This matter is before the Court upon the motion for summary judgment filed by Plaintiff, Fifth Third Bank, Inc. ("Fifth Third"), against Defendant, J. Fred Miller, III d/b/a Miller Thoroughbreds, LLC ("Miller") [DE #29]. The motion having been fully briefed, this matter is ripe for review.

I.      **FACTUAL BACKGROUND**

This case arises from the execution and delivery of a promissory note by Miller to Fifth Third on or about June 27, 2008 in the original principal amount of $1,400,000.00 (the "Note"). The Note was secured by the grant of a security interest to Fifth Third in certain equine collateral owned by Miller. According to Fifth Third, pursuant to the terms of the Note, Miller was required to pay quarterly payments of interest. Fifth Third alleges that, since January 1, 2009, Miller has been in default on these payments. Miller denies that he received a demand from Fifth Third asserting his default. However, he concedes that the Note has a stated maturity date of July 1, 2010 and he does not deny that the Note was not paid at maturity.

According to Miller (and not disputed by Fifth Third), Miller owned and operated a thoroughbred business, racing horses in his individual name and under his company name, Miller Thoroughbreds, LLC, and owning some broodmares. Miller Thoroughbreds, LLC filed bankruptcy in the United States Bankruptcy Court for the Middle District of Florida in 2009, and has recently completed a court-approved plan of liquidation, which included the sale of Miller's farm in Woodford County, Kentucky. Most of Miller's horses, including all breeding stock, were kept on the Miller farm in Woodford County, except for three horses that were still racing through the end of 2009. Pursuant to an Order entered by the Bankruptcy Court in Florida, Miller agreed to voluntarily surrender his "equine collateral" (as that term is defined in the security agreement securing the Note) to Fifth Third, so that Fifth Third could take possession of and liquidate this collateral. (*See* Reply Memorandum filed by Fifth Third, DE #33, at Exhibit 1). Accordingly, Fifth Third has taken possession of and sold some of Miller's horses.

Fifth Third seeks summary judgment against Miller for his default on the Note. In support, Fifth Third submits an affidavit from David J. Verville, assistant vice president of Fifth Third, stating that, as of August 27, 2010, Miller owed Fifth Third the following sums related to the Note:

| | |
|---|---|
| Principal amount: | $1,277,233.64 |
| Interest: | $116,378.83 |
| Fees and costs: | <u>$5,759.52</u> |
| TOTAL: | $1,399,371.99 |

According to Verville's affidavit, this amount reflects a credit for the net proceeds of all collateral disposed of pursuant to the agreement with Miller. (*See* David J. Verville Affidavit, DE #29-1, at ¶6).

Miller does not dispute that Fifth Third is entitled to summary judgment on liability, as he does not dispute that he executed the Note, received the loan proceeds and granted Fifth Third a security interest in his horses. Rather, Miller disputes Fifth Third's calculation of the amount that it is owed by Miller. According to Miller, "there are serious disputes (a) whether Fifth Third Bank has sold the Miller horses in a commercially reasonable manner in order to maximize their value for the mutual benefit of the Bank and Dr. Miller as debtor, and (b) whether the Bank has properly accounted for the various expenses and sales receipts in its abbreviated calculation of the loan balance contained in its motion and affidavit of David Verville." (*See* Defendant's Corrected Response to Motion for Summary Judgment, DE # 32-1, at p. 3).

## II.   LEGAL STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In reviewing a motion for summary judgment, "this Court must determine whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " *Patton v. Bearden*, 8 F.3d 343, 346 (6th Cir. 1993) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Once the moving party shows that there is an absence of evidence to support the nonmoving party's case, the nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Phillip Morris Companies, Inc.*, 8 F.3d 335, 340 (6th Cir. 1993). Conclusory allegations are not enough to allow a nonmoving party to withstand a motion for summary judgment. *Id.* at 343. "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 252. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (citations omitted).

### III. ANALYSIS

Fifth Third is entitled to summary judgment with respect to Miller's liability on the Note. The parties do not dispute that Miller executed the Note, received the loan proceeds and granted Fifth Third a security interest in his horses as collateral. Although Miller's Answer denies that he received a demand from Fifth Third asserting his default on the Note, in his briefs, he does not deny that the Note was not paid on or before its maturity date and, in fact, concedes that summary judgment in Fifth Third's favor is appropriate with respect to his liability on the Note. The Court now turns to the question of whether Miller has raised a genuine issue of material fact with respect to the extent of his liability on the Note.

As noted above, there is no dispute between the parties that Miller agreed to voluntarily surrender his horses to Fifth Third so that they could be sold and the proceeds applied to his debt. With respect to the regulation of secured transactions, Kentucky has adopted the Uniform Commercial Code ("U.C.C."), which requires that "[e]very aspect of a disposition of collateral,

4

including the method, manner, time, place, and other terms, must be commercially reasonable." K.R.S. § 355.9-610. The purpose of this provision is "to protect the debtor's interest by ensuring that he will 'receive the market price of his collateral.'" *Layne v. Bank One, Ky., N.A.*, 395 F.3d 271, 279 (6th Cir. 2005)(applying Kentucky law)(quoting *Ocean Nat'l Bank v. Odell*, 444 A.2d 422, 426 (Me. 1982)). With respect to the particulars of the "commercially reasonable" requirement, K.R.S. § 355.9-627(2) further provides:

> A disposition of collateral is made in a commercially reasonable manner if the disposition is made: (a) in the usual manner on any recognized market; (b) at the price current in any recognized market at the time of the disposition; or (c) otherwise in conformity with reasonable commercial practices among dealers in the type of property that was the subject of the disposition.
>
> K.R.S. § 355.9-627(2).

Under Kentucky law, the secured party has the burden to show that it acted with commercial reasonableness. *J.P. Morgan Delaware v. Onyx Arabians II, Ltd.*, 825 F.Supp. 146, 150 (W.D.Ky. 1993)(citing *Bank of Josephine v. Conn*, 599 S.W.2d 773 (Ky. App. 1980)). A secured party that fails to establish the commercial reasonableness of its action in holding and disposing of the collateral in question may be estopped from obtaining a deficiency judgment against the debtor. *See Chrysler Credit Corp. v. H & H Chrysler-Plymouth-Dodge, Inc.*, 927 F.2d 270, 273 (6th Cir. 1991)(applying Kentucky law). *See also* K.R.S. 355.9-626(c).

Here, the only proof that Fifth Third has provided as to the amount owed by Miller is the Verville affidavit. Although the affidavit notes that the balance reflects a credit for the net proceeds from the sales of Miller's horses, Fifth Third fails to specify any further information about these net proceeds, including the amount and how these proceeds were calculated. In addition, although Fifth

5

Third states that the public sales of the horses were held using the standard sales entities Keeneland and Fasig-Tipton, Fifth Third provides the Court with little to no specific information on the method, manner, time and other terms of the sales. Although Miller has submitted a chart containing some of this information that was apparently forwarded to his counsel by Fifth Third's counsel, this chart provides only minimal information regarding the horses that were sold privately.

In addition, Fifth Third has failed to provide the Court with any specific evidence regarding the reasonable commercial practices among dealers in horses, much less whether its actions conformed to these practices. Fifth Third also states that Dr. Miller consented to each and every sale, that he signed the entry papers for each horse sold at public auction and that he contested only one of the private sales consummated by the bank. However, Fifth Third attaches no evidence supporting these statements. Moreover, there is no evidence that Miller had notice of the other private sales. To the contrary, Miller's brief asserts that some of the private sales were undertaken with notice to him and some were not. To the extent that Miller did not have notice of the private sales, Miller had no opportunity to contest these sales. Regardless, as Fifth Third has failed to provide the Court with even basic information about the circumstances of the sales of the Miller horses, both public and private, and whether these sales conformed to the reasonable commercial practices among horse dealers, this Court simply has no grounds upon which to find that Fifth Third acted with commercial reasonableness in selling the horses.

Fifth Third does provide the Court with evidence of the expenses it has incurred in preserving the horses and states that it is not including these expenses in the amount it seeks to recover from Miller. Given the bare-bones nature of the information provided by Fifth Third regarding the amount due on the Note, there is no way for the Court to ascertain whether this statement is accurate.

Regardless, this evidence does demonstrate that Fifth Third undertook some efforts to maintain the horses, including preparing them for sale. However, evidence of whether Fifth Third's efforts to prepare the horses for sale were commercially reasonable is absent. The only evidence submitted to the Court in this regard is the affidavit of Barbara Beagle submitted by Miller stating that the Miller horses were poorly prepped for the public sales, thus hurting their values. Although Fifth Third argues that Beagle is owed money by Miller and, therefore, is not a disinterested witness, this argument goes only to her credibility and is insufficient grounds to disregard her testimony. The Beagle affidavit is sufficient to raise a genuine issue of material fact regarding whether Fifth Third disposed of the equine collateral in a commercially reasonable manner, including whether its efforts to prepare the horses for sale were commercially reasonable and whether Fifth Third's decisions regarding the method, timing, place and manner of sales were appropriate.

This Court is aware that K.R.S. § 355.9-627 provides that "[t]he fact that a greater amount could have been obtained by a collection, enforcement, disposition, or acceptance at a different time or in a different method from that selected by the secured party is not of itself sufficient to preclude the secured party from establishing that the collection, enforcement, disposition, or acceptance was made in a commercially reasonable manner." K.R.S. § 355.9-627. Thus, contrary to Miller's suggestions, Fifth Third was not obligated to sell his horses at the highest possible price. However, Fifth Third still has the obligation to affirmatively show that it acted in a commercially reasonable manner in selling the horses. It has failed to do so here.

Moreover, Miller submits that, on or around November 19, 2009, Fifth Third's counsel had advised his counsel that the horses had been appraised for $845,000.00, which was fairly close to Miller's own valuation. Miller has also provided the Court with an April 15, 2009 appraisal that

Fifth Third apparently obtained from Michael S. Brown estimating the fair market value of all of Miller's horses at $1,470,000.00. However, Fifth Third later provided Miller with a December 14, 2009 appraisal from Jared Hughes d/b/a Hughes Bloodstock, LLC that valued the entire thoroughbred inventory of Miller at $282,000.00. In July 2009, Hughes had appraised Miller's yearlings and weanlings of 2008 and 2009 only at $465,000.00. Hughes also recommended that most of the horses be sold in the Fasig-Tipton February Mixed Sale, which Miller argues was inappropriate. Under K.R.S. § 355.9-627, discrepancies between the initial valuation of the horses and Hughes' December 2009 appraisal, as well as the eventual price obtained for the horses from the sales, does not necessarily preclude Fifth Third from establishing that its sale of the Miller horses was commercially reasonable. However, while a low price may be insufficient to prove commercial unreasonableness, a large price discrepancy may cause a court to carefully scrutinize all aspects of a disposition to ensure that each aspect was commercially reasonable. *Layne*, 395 F.3d at 281, n.10. The drastic decline in the value of the horses from April 2009 to December 2009 certainly warrants further explanation from Fifth Third. Regardless, as Fifth Third has failed to provide the Court with evidence demonstrating that it acted with commercial reasonableness, it is unable to rely on the protection provided by K.R.S. § 355.9-627.

### IV. CONCLUSION

Accordingly, for the reasons stated herein, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** that:

(1) The Motion for Summary Judgment filed by Plaintiff, Fifth Third Bank, Inc. [DE #29] is **GRANTED**, in part, and **DENIED**, in part;

(2)	Summary Judgment is **GRANTED** in favor of Fifth Third as to Defendant, J. Fred Miller, III d/b/a Miller Thoroughbreds, LLC's, liability on the Note; and

(3)	Summary Judgment is **DENIED** in regards to the balance owed to Fifth Third by Miller arising from his liability on the Note.

This January 12, 2011.

Signed By:
*Karl S. Forester* KSF
**United States Senior Judge**